## PETER BAUDUY v. ELEUTHERE IRENEE DU PONT, PETER SAMUEL DU PONT, MADAME BUREAU DE PUSY, AND JACQUES BIDERMAN.

Court of Chancery.   New Castle.

Account begins, *Ridgely's Notebook I, 181.*

Complainant's (Bauduy's) counsel then attacks several of the entries in the accounts as being incomplete and erroneous, and alleges that the commission was not computed on the agreed basis. Defendants take issue upon all these allegations, and contest the complainant's statement that the agreement was mistranslated from the French.

THE CHANCELLOR interposes that there was never any settlement among all the members of the partnership. He states that "even on January 1, 1810, there was no such liquidation of the accounts of each individual member, as to reduce to certainty the true state of their interests"; he finds that the annual inventory and valuation required by the sixth article of the original agreement was never made before December 31, 1809. He finds that there was no ascertainment of profits between December, 1810, and December, 1813; hence there was no way in which the parties could have determined how much was owed to Bauduy. Therefore THE CHANCELLOR overrules the defendants' pleas.

Petition by Bauduy, April 14, 1818, to have a deed of conveyance from him to Du Pont brought into court. Bauduy alleges that the conveyance was never recorded, and that hence if Du Pont should die, Bauduy would be compelled to file a bill in Chancery. Du Pont argues that he gave valuable consideration for the paper, that it is his property, and that there is no special reason for bringing this paper into this court. THE CHANCELLOR refuses Bauduy's petition.

A review of the schedules and accounts follows, August 31, 1818. Depositions of several witnesses are inserted in the record. Complainant's (Bauduy's) counsel objects to one witness, a Mr. Duplanty, on the ground that he is an interested party, having become bookkeeper of the firm in 1810, immediately following Bauduy in that position. THE CHANCELLOR rules that Duplanty has no such interest as to disqualify him.

Thereafter the complainant (Bauduy) notes exceptions to the accounts filed by the defendant.

THE CHANCELLOR states that the plaintiff cannot make these exceptions, because his complaint in no way alleged the claim that he now argues was wrongfully left out of the accounts; he further limits plaintiff to his allegations in reference to the profits

224

from the manufacture of gun powder, and excludes considera-tion of profits from manufacture of other material. The excep-tions as to the method of computation of commissions are retract-ed by the plaintiff. Then follows argument upon the validity of the method of computation.

THE CHANCELLOR rules, April 14, 1819, that the question of com-mission is governed exclusively by the wording of the agreement. He construes the "2½%" provision to mean that plaintiff was to get 2½% on gross sales and not on net proceeds. His basis is the general language of the agreement which indicated that gross sales were to be used.

Then counsel for defendants argues that in some transactions involving the United States government, the company was supplied with the materials by the United States government; and hence that these items should not be included in computation of the com-missions for Bauduy. THE CHANCELLOR, rules that according to the spirit of the agreement Bauduy should be allowed "commissions for work in which the purchase of materials does not enter," and that "the equity of the case will be to allow as for materials not pur-chased by the company."

THE CHANCELLOR rules on all the exceptions separately.

An appeal is prayed but is not prosecuted.

The case is continued by consent April 18, 1820 after both par-ties have filed their exceptions. Complainant excepts to all the rul-ings of THE CHANCELLOR, which, he argues, are not in conformity with standard accounting and legal principles. Then, August 29, 1821, follows argument again on the proper method of computation, with further rulings of THE CHANCELLOR.